UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THOMAS HARSH, | Case No. 2:17-cv-02069-MMD-NJK |
| Petitioner, | AMENDED ORDER |
| v. | |
| JO GENTRY, *et al.*, | |
| Respondents. | |

I.    **SUMMARY**

Petitioner Thomas Harsh filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before this Court for adjudication of the merits of Harsh's second amended petition. (ECF No. 22 ("Petition").) For the reasons discussed below, the Court denies both the Petition and a certificate of appealability.

II.    **BACKGROUND**

Harsh's convictions are the result of events that occurred in Clark County, Nevada on or about July 28, 2010. (ECF No. 32-5.) Marissa Sobrejuanite reported her 1994 Toyota Tercel stolen on July 26, 2010. (ECF No. 11-2 at 208-210.) Two days later, on July 28, 2010, around 1:00 a.m., law enforcement observed the Toyota Tercel being operated without its headlights activated. (ECF No. 23-3 at 6-7.) During a traffic stop of the vehicle, the officers were notified that the vehicle had been stolen, so they arrested Harsh, the driver of the vehicle. (*Id.* at 10-12.) A shaved Hyundai key was found in the ignition and numerous keys, a screwdriver, and a Leatherman multi-tool were located on the front passenger seat during an inventory search of the vehicle. (*Id.* at 13, 19.)

Following a jury trial, Harsh was convicted of possession of a stolen vehicle and possession of burglary tools. (ECF No. 11-7.) The state district court adjudged him guilty under the large habitual criminal statute and sentenced him to life in prison with parole

eligibility after 120 months for the possession of a stolen vehicle conviction and 12 months for the possession of burglary tools conviction. (*Id.*) Harsh appealed, and the Nevada Supreme Court affirmed on March 14, 2013. (ECF No. 11-15.) Remittitur issued on April 10, 2013. (ECF No. 11-16.)

Harsh's counseled state habeas petition and supplemental petition were filed on February 3, 2014, and December 14, 2015, respectively. (ECF Nos. 12-4, 34-1.) The state district court denied the petition on August 3, 2016. (ECF No. 34-7.) Harsh appealed, and the Nevada Court of Appeals affirmed on June 14, 2017. (ECF No. 13-8.) Remittitur issued on July 10, 2017. (ECF No. 13-9.)

Harsh's *pro se* federal habeas petition was filed on October 4, 2017. (ECF No. 6.) Following the appointment of counsel, Harsh filed a first and second amended petition on November 16, 2017, and March 9, 2018, respectively. (ECF Nos. 16, 22.) Respondents moved to dismiss on August 2, 2018. (ECF No. 31.) This Court granted the motion, in part, determining that Ground 2 was unexhausted and Grounds 6(3), 6(8), 6(9), 6(10), 6(11), 6(12), and 6(13)[1] were technically exhausted but procedurally defaulted. (ECF No. 44.) In response to the Court's order, Harsh moved to dismiss Ground 2. (ECF No. 46.) The Court granted the motion. (ECF No. 47.) Respondents answered the remaining claims in Harsh's second amended petition on November 27, 2019, and Harsh replied on February 25, 2020. (ECF Nos. 62, 66.)

In his remaining claims for relief, Harsh alleges the following violations of his federal constitutional rights:

1.　His life sentence is cruel and unusual punishment.

3.　His right to conflict-free counsel was violated when the state district court did not allow his trial counsel to withdraw.

4.　There was insufficient evidence to convict him.

5.　The state district court failed to give an instruction on his theory of the case.

---

[1]This Court erroneously omitted Ground 6(13) in the conclusion of its previous order. (*See* ECF No. 44 at 10.)

6(1).   His   trial   counsel   failed   to   investigate   Sobrejuanite's bankruptcy filings and present the bankruptcy documentation.

6(2).   His trial counsel failed to call Christine Owen to demonstrate that the State's case was founded on perjured testimony.

6(3).   His trial counsel failed to call Owen to establish Sobrejuanite's perjury and failed to move for a mistrial.

6(4).   His   trial   counsel   failed   to   argue   that   Sobrejuanite's noncompliance with registration requirements demonstrated that she was not the owner of the vehicle.

6(5).   His trial counsel failed to call a custodian of records to admit exculpatory evidence.

6(6).   His trial counsel failed to adequately investigate the existence of Sobrejuanite's registered certificate of title.

6(7).   His trial counsel failed to object to expert testimony.

6(8).   His trial counsel failed to move for a new trial or resentencing based on judicial bias.

6(9).   His trial counsel failed to object to Jury Instruction No. 7.

6(10). His trial counsel failed to move to strike several jurors and to move for a new trial due to the lack of an impartial jury.

6(11). His trial counsel failed to challenge the possession of burglary tools statute as unconstitutionally vague.

6(12). His   trial   counsel   failed   to   object   to   the   State's   argument regarding the elements of possession of burglary tools.

6(13). His trial counsel failed to move for a judgment of acquittal.

(ECF No. 22.)

## III.    LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established United States Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV.    DISCUSSION

### A. Ground 1

In Ground 1, Harsh alleges that his federal constitutional rights were violated because his life sentence amounts to cruel and unusual punishment, especially because his prior offenses were nonviolent and because the instant criminal offense was the result of his untreated bipolar disorder, the death of his mother, and his relapse into drug use. (ECF No. 22 at 12-13.) In affirming Harsh's judgment of conviction, the Nevada Supreme Court held:

> Harsh contends that his sentence of life imprisonment with the possibility of parole after ten years constitutes cruel and unusual punishment because the sentencing statute is unconstitutional, the sentence does not serve the interest of justice, and he needs treatment for his mental illness. We review a district court's sentencing decision for abuse of discretion, *Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009), and the constitutionality of a statute de novo, *Silvar v. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006). "Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional. In order to meet that burden, the challenger must make a clear showing of invalidity." *Id.* (footnote omitted). Harsh appears to claim that NRS 207.010(1)(b) is unconstitutional because the legislative history indicates that habitual criminal punishment should be reserved for repeat offenders who have committed violent crimes. However, NRS 207,010(1)(b) is clear on its face and plainly applies to all felonies and not just those involving violent crimes. *See State v. Lucero*, 127 Nev. ___, ____, 249 P.3d 1226, 1228 (2011) ("[W]hen a statute is clear on its face, a court cannot go beyond the statute in determine legislative intent." (internal quotation marks omitted)). Because Harsh has not demonstrated that the habitual-criminal-punishment statute is unconstitutional, his sentence falls within the parameters of that statute, *see* NRS 207.010(1)(b)(2) and we are not convinced that the sentence is so grossly disproportionate to the gravity of the offense and Harsh's history of recidivism as to shock the conscience, we conclude that the sentence does not violate the constitutional proscriptions against cruel and unusual punishment. *Ewing v. California*, 538 U.S. 11, 29 (2003) (plurality opinion); *Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion); *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996); *Glegola v. State*, 110 Nev. 344, 348, 871 P.2d 950, 953 (1994); *see also Arajakis*, 108 Nev. at 983, 843 P.2d at 805.

(ECF No. 11-15 at 5-6.) The Nevada Supreme Court's rejection of Harsh's claim was neither contrary to nor an unreasonable application of clearly established law as

1   determined by the United States Supreme Court and was not based on an unreasonable

2   determination of the facts.

3   The Eight Amendment provides that "cruel and unusual punishments [shall not

4   be] inflicted." U.S. Const. amend. VIII. "[B]arbaric punishments" and "sentences that are

5   disproportionate to the crime" are cruel and unusual punishments. *Solem v. Helm*, 463

6   U.S. 277, 284 (1983) (concluding that a habitual offender's sentence for a seventh

7   nonviolent felony for life without the possibility of parole is disproportionate). The Eighth

8   Amendment does not, however, mandate strict proportionality between the defendant's

9   sentence and the crime. *See Ewing v. California*, 538 U.S. 11, 23 (2003). Rather, "only

10  extreme sentences that are 'grossly disproportionate' to the crime" are forbidden.

11  *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991). "In assessing the compliance of a

12  non-capital sentence with the proportionality principle, [this Court] consider[s] 'objective

13  factors'" such as "the severity of the penalty imposed and the gravity of the offense."

14  *Taylor v. Lewis*, 460 F.3d 1093, 1098 (9th Cir. 2006). "[S]uccessful challenges based on

15  proportionality are 'exceedingly rare,' and deference is due legislative judgments on

16  such matters." *Id.* (citing *Solem*, 463 U.S. at 289-90).

17  Harsh was adjudged guilty under Nevada's "Large Habitual Criminal Statute."

18  (ECF No. 11-7 at 3.) That statute, NRS § 207.010(1)(b), provides that a habitual criminal

19  is "a person convicted in [Nevada] of . . .  [a]ny felony, who has previously been three

20  times convicted . . . of any crime which under the laws of the situs of the crime or of this

21  State would amount to a felony."[2] NRS § 207.010(1)(b)(1)-(3) further provides that a

22  person found to be a large habitual criminal "shall be punished for a category A felony

23  by imprisonment in the state prison" for life without the possibility of parole, life with the

24  possibility of parole after 10 years, or a definite term of 25 years with parole eligibility

25  after 10 years. Harsh was sentenced to life in prison with parole eligibility after 10 years

26  for his possession of a stolen vehicle conviction. (ECF No. 11-7 at 3.)

27  _____

28  [2]The Nevada Supreme Court, the final arbiter of Nevada law, has stated that "NRS 207.010 makes no special allowance for non-violent crimes or for the remoteness of convictions." *Arajakis v. State*, 108 Nev. 976, 983, 843 P.2d 800, 805 (1992).

1    Although the state district court sentenced Harsh to the second harshest
2    punishment allowed by NRS § 207.010(1)(b), the Nevada Supreme Court reasonably
3    concluded that Harsh's sentence was not "'grossly disproportionate' to the crime."
4    *Harmelin*, 501 U.S. at 1001; *see, e.g., United States v. Parker*, 241 F.3d 1114, 1117 (9th
5    Cir. 2001) ("Generally, as long as the sentence imposed on a defendant does not exceed
6    statutory limits, this court will not overturn it on Eighth Amendment grounds."). As the
7    state district court reasoned, Harsh has "been in prison before and . . . been revoked on
8    parole, with seven prior felony convictions. [Harsh has] had an opportunity to prove
9    [him]self and [he has not] taken that opportunity." (ECF No. 11-6 at 9.) Indeed, Harsh's
10   presentence investigation report provided that his criminal record consisted of seven
11   felonies, one gross misdemeanor, 15 misdemeanors, five prison terms, and 11 jail
12   terms. (ECF No. 61-1 at 4.)

13   Although Harsh's sentence of life with the possibility of parole after 10 years for
14   possession of a stolen vehicle may appear disproportionate, Harsh's sentence is based
15   on the fact that he was adjudged to be a habitual criminal with at least three prior
16   felonies. *See* NRS § 207.010(1)(b); *see Solem*, 463 U.S. at 297 ("[A] State is justified in
17   punishing a recidivist more severely than it punishes a first offender."). Harsh's extensive
18   criminal record demonstrates that the aggregate gravity of his offenses was severe,
19   such that his sentence does not violate the Eight Amendment. *See Taylor*, 460 F.3d at
20   1098. It is also worth noting that Harsh was granted parole in 2020. *See Rummel v.*
21   *Estelle*, 445 U.S. 263, (1980) ("[B]ecause parole is 'an established variation on
22   imprisonment of convicted criminals,' . . . a proper assessment of [a state's] treatment
23   of [a habeas petitioner] could hardly ignore the possibility that he will not actually be
24   imprisoned for the rest of his life."). Therefore, the Nevada Supreme Court reasonably
25   concluded that Harsh's sentence did not violate the proscription against cruel and
26   unusual punishment, and, as such, he is denied relief on Ground 1.[3]

27
28          [3]This Court would have reached the same conclusion even reviewing this claim *de novo* as Harsh alleges it should. (*See* ECF No. 66 at 24.)

**B.  Ground 3**

In Ground 3, Harsh alleges that his federal constitutional rights were violated because the state district court did not allow his trial counsel to withdraw. (ECF No. 22 at 17.) Harsh elaborates that he was forced to choose between waiving his right to take the stand and taking the stand without effective guidance from his trial counsel. (*Id.* at 19.) In affirming Harsh's judgment of conviction, the Nevada Supreme Court held:

> Harsh contends that the district court abused its discretion by denying defense counsel's motion to withdraw because there was a breakdown in communications and defense counsel indicated that a conflict of interest might exist if he testified on his own behalf. [Footnote 1: Defense counsel's motion was made on the first day of trial and did not purport to be a motion to substitute counsel. *See generally Young v. State*, 120 Nev. 963, 968-69, 102 P.3d 572, 576 (2004).] A criminal defendant has a Sixth Amendment right to counsel who is reasonably competent and conflict-free. *Daniels v. Woodford*, 428 F.3d 1181, 1196 (9th Cir. 2005). To overcome the presumption that defense counsel is reasonably competent, a defendant must show that counsel's representation was unreasonable under the prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish a violation of the right to conflict-free counsel, a defendant "must show that an actual conflict of interest adversely affected his lawyer's performance." *U.S. v. Moore*, 159 F.3d 1154, 1157 (9th Cir. 1998) (internal quotation marks omitted). Here, the record reveals that the district court made inquiries about defense counsel's motion and there was no showing that her representation was unreasonable or conflicted. Accordingly, we conclude that Harsh has failed to demonstrate that the district court erred by denying defense counsel's motion to withdraw as attorney of record.

(ECF No. 11-15 at 3-4.)[4] The Nevada Supreme Court's rejection of Harsh's claim was neither contrary to nor an unreasonable application of clearly established law as

---

[4]Harsh argues that this Court should review this ground *de novo* because "the Nevada Supreme Court failed to address the claim as raised." (ECF No. 66 at 31.) Harsh expounds that his original claim was that "the trial court violated his constitutional rights by not permitting counsel to withdraw," which was supported by a legal framework "for claims of irreconcilable conflicts with counsel," but the Nevada Supreme Court "instead classified it as a challenge to an actual conflict of interest." (*Id.*) While this Court acknowledges that a claim of irreconcilable conflict with one's trial counsel and a claim of a conflict of interest on the part of one's trial counsel are distinct, this Court disagrees that the Nevada Supreme Court failed to adjudicate this claim on the merits. Rather, the Nevada Supreme Court appears to have considered both issues. (*See* ECF No. 11-15 at

1  determined by the United States Supreme Court and was not based on an unreasonable

2  determination of the facts.

3       On the first morning of trial, Harsh's trial counsel explained that she was having

4  "communication issues" with Harsh in that he would not "speak with [her], ask to leave

5  and not speak with [her]." (ECF No. 11-2 at 5.) Harsh addressed the state district court,

6  explaining that he had "been trying to communicate with [his trial counsel] for over two

7  months" and before his meeting with his trial counsel the day before trial, he had "seen

8  her one time for five minutes" two months previously. (*Id.* at 6.) Harsh then informed the

9  court that his communication with his trial counsel was "broken" and that his family was

10 "getting an attorney for" him. (*Id.* at 6-7.) Harsh's trial counsel was then given an

11 opportunity to expound on the "communication issues" with Harsh: "I do come with case

12 law for him to look at and read, he won't take it. Explain why something won't be filed or

13 why something won't be done. And he says, no, I'm not reading that. And he just

14 screams at me when I try to explain it to him." (*Id.* at 7.) The court refused to allow Harsh

15 to substitute private counsel for his current counsel unless his private counsel was

16 prepared to go to trial that day. (*Id.* at 7.) The court also determined that Harsh's current

17 trial counsel would remain his counsel, as she was "a good lawyer" who was "ready to

18 go to trial." (*Id.* at 7, 9.) A little while later, prior to the court bringing the prospective

19 jurors into the courtroom, Harsh's trial counsel spoke with him and then informed the

20 court, "[h]e wants to testify. I'm trying to specify what he's testify [sic] to. Based on his

21 representations, I have a conflict and we need to withdraw." (*Id.* at 11.) The court denied

22 the request, explaining, "if it's that he is going to commit perjury, you can tell him - - all

23 you can do is ask questions [about] what happened." (*Id.*)

24      The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused

25 shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defense." U.S.

26

27 3 (emphasis added) (explaining that "Harsh contends that the district court abused its
   discretion by denying defense counsel's motion to withdraw because there was a

28 breakdown in communication *and* defense counsel indicated that a conflict of interest
   might exist if he testified on his own behalf.")

Const. amend. VI. However, the Sixth Amendment does not "guarantee[ ] a 'meaningful relationship' between an accused and his [or her] counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

This Court agrees that there was a breakdown in Harsh's relationship with his trial counsel. *See United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998) (fashioning a three-part test to determine whether a conflict rises to the level of being irreconcilable: "(1) the extent of the conflict; (2) the adequacy of the inquiry [by the state district court]; and (3) the timeliness of the motion"). Indeed, in addition to Harsh's statements that his communication with his trial counsel was broken, his trial counsel also reported that Harsh refused to take or read the caselaw she provided him, screamed at her when she tried to explain something, and asked her to leave when she tried to speak with him. (*See* ECF No. 11-2 at 5-7.) And although Harsh and his trial counsel may have had a short discussion during a break in the proceedings on the morning of the first day of trial (*see* ECF No. 11-2 at 11), this discussion took place after the state district court denied Harsh's implicit request for a continuance to obtain private counsel. At this point—moments before the trial was set to begin and after the state district court had indicated that any substituted counsel would have to be prepared to proceed to trial as scheduled—Harsh was forced with making do with his trial counsel.

Further, the record reflects the state district court performed only a perfunctory inquiry into Harsh's conflict with his trial counsel. Harsh and his trial counsel were not questioned privately, and, in fact, the state district court appeared to be reluctant to hear anything Harsh had to say about the conflict, telling Harsh "you can sit and be quiet, you don't have to talk to your attorney, but you're going to trial today." (ECF No. 11-2 at 6.) And, the state district court's apparent focus on Harsh's trial counsel's competence as its basis for dismissing Harsh's concerns is troubling and further underscores the lack of meaningful probing into the extent of the conflict.

That being said, the Ninth Circuit has determined that "[e]ven if [a petitioner] were successfully able to demonstrate a complete breakdown in communication or prove that

an irreconcilable conflict existed under the *Moore* factors, [an] irreconcilable-conflict claim would still fail" because the Supreme Court "has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel." *Carter v. Davis*, 946 F.3d 489, 508 (2019) (explaining that "AEDPA conditions habeas relief on a determination that the state-court decision unreasonably applied 'clearly established Federal law' as pronounced by the U.S. Supreme Court" (citing 28 U.S.C. § 2254(d)(1))). Accordingly, because the Nevada Supreme reasonably determined that Harsh failed to demonstrate that the state district court erred by denying his trial counsel's motion to withdraw based on an irreconcilable conflict in accordance with *Carter*, this Court concludes that Harsh is not entitled to federal habeas relief for Ground 3.[5]

### C. Ground 4

In Ground 4, Harsh alleges that his federal constitutional rights were violated because there was insufficient evidence to convict him of possession of a stolen vehicle. (ECF No. 22 at 19.) Specifically, Harsh argues that the State provided insufficient evidence that the vehicle was stolen or that he knew or should have known that it was stolen. (*Id.* at 20.) In affirming Harsh's judgment of conviction, the Nevada Supreme Court held:

> Harsh contends that insufficient evidence supports his conviction for possession of a stolen vehicle because there was no damage to the vehicle, the insurer and registrant of the vehicle did not testify, and the State did not demonstrate that he knew or should have known that the vehicle was stolen. We review the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). Here, the jury heard testimony that the victim reported the theft of her Toyota to the police. The police verified the victim's ownership of the Toyota—her former boyfriend had given her

---

[5]Harsh argues the Nevada Supreme Court made the following unreasonable factual determinations: the state district court "made inquiries" about the conflict and there was no showing that Harsh's trial counsel's "representation was unreasonable." (ECF No. 66 at 32.) This Court disagrees. Although it was only cursory, the state district court did inquire into the conflict. (*See* ECF No. 11-2 at 5-11.) And although there may have been a breakdown in Harsh's relationship with his trial counsel, that does not amount to her representation being unreasonable.

the Toyota and signed the motor vehicle title over to her. The police subsequently spotted and stopped the Toyota, discovered that Harsh was the driver, and found a shaved Hyundai key in the ignition switch. The police also found other shaved keys, a flathead screwdriver, and a Leatherman multi-tool in the Toyota. Harsh told the police that the car was not his and that he "borrowed it form a guy," but he was unable to provide the guy's name or contact information. We conclude that a rational juror could reasonably infer from this evidence that Harsh committed the offense of possession of a stolen vehicle. *See* NRS 205.273(1)(b). It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003) (circumstantial evidence alone may sustain a conviction).

(ECF No. 11-15 at 2-3.)[6] The Nevada Supreme Court's rejection of Harsh's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review of a sufficiency of the evidence claim, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be viewed "in the light most favorable to the prosecution." *See id.* Federal habeas relief is available only if the state-court

_____

[6]Harsh argues that this Court can conduct a *de novo* review of this ground because the Nevada Supreme Court's determination was based on an unreasonable factual determination that the police "verified the victim's ownership of the Toyota." (ECF No. 66 at 36 (quoting ECF No. 11-15 at 2).) This Court disagrees, as this factual determination was reasonable. (*See* ECF No. 11-2 at 204-05 (testimony of Sobrejuanite that she was given the Toyota Tercel's title).)

determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of *Jackson. See Juan H.*, 408 F.3d at 1275 n.13.

### i. Relevant Evidence

Marissa Sobrejuanite testified that her ex-boyfriend, Pedro Co, gave her a 1994 Toyota Tercel around December 2009 or January 2010. (ECF No. 11-2 at 203, 216.) Co gave Sobrejuanite the Toyota Tercel's title, and Sobrejuanite signed it. (*Id.* at 204-05.) Sobrejuanite, however, did not change the vehicle's registration until the fall of 2010 "[b]ecause [she] ha[d] to file a bankruptcy and [her] attorney said [she could] not put it in [her] name yet until the bankruptcy [was] done." (*Id.*)

On July 26, 2010, around 10:30 p.m., Sobrejuanite left her apartment and entered a parking garage to retrieve the Toyota Tercel in order to go to 7-Eleven, but it was missing. (ECF No. 11-2 at 208.) Sobrejuanite reported the theft after "five, ten minutes" of looking around for the vehicle. (*Id.* at 210.) Sobrejuanite did not know Harsh and did not grant him permission to drive the vehicle. (*Id.* at 215.)

Officer Shaun Ditmar testified that on July 28, 2010, around 1:00 a.m., he observed a Toyota Tercel being operated without its headlight activated, so he and his partner effectuated a traffic stop of the vehicle. (ECF No. 23-3 at 6-7.) As the officers were "getting out of the[ir] vehicle, Dispatch . . . let[ them] know over the radio that the vehicle was reported stolen." (*Id.* at 10.) The officers placed the driver of the vehicle, Harsh, in handcuffs. (*Id.* at 11-12.) Meanwhile, Harsh informed the officers that "the car was not his and that a guy let him borrow it." (*Id.* at 12.) Ditmar asked Harsh about the individual, including the person's name and contact information, but Harsh "just kept saying that it was a guy." (*Id.* at 12, 29.)

Officer Ditmar conducted an inventory of the vehicle, which revealed a shaved "Hyundai key in the ignition," numerous keys on the passenger front seat, "a long, flathead screwdriver," and a Leatherman multi-tool. (ECF No. 23-3 at 13, 18.) Ditmar explained the importance of these items: "people [who] steal cars will often take the screwdriver and they'll jam it into the ignition and force start it. . . . At that point, . . . they'll

1  use a key that's shaved to go ahead and stick in there and turn the car on." (*Id.* at 14.)

2  Dispatch then informed Sobrejuanite about the recovery of the Toyota Tercel, and she

3  came down to the traffic stop location to collect the vehicle. (*Id.* at 12-13.)

### ii.  Sufficiency of the Evidence

5  Sufficiency of the evidence claims are judged by the elements defined by state

6  law. *See Jackson*, 443 U.S. at 324 n.16. And Nevada law provides that "[a] person

7  commits an offense involving a stolen vehicle if the person . . . [h]as in his or her

8  possession a motor vehicle which the person knows or has reason to believe has been

9  stolen." NRS § 205.273(1)(b).

10  Harsh argues that the State needed to either call Co to testify that he did not give

11  Harsh permission to use the vehicle or prove that Sobrejuanite had an exclusive

12  possessory interest in the vehicle. (ECF No. 22 at 21.) Instead, Harsh argues that the

13  totality of the evidence did not disprove that Co had the right to—and did—lend him the

14  vehicle. (*Id.*) However, viewing the evidence "in the light most favorable to the

15  prosecution," *see Jackson*, 443 U.S. at 319, the Nevada Supreme Court reasonably

16  determined that a rational trier of fact could have found beyond a reasonable doubt that

17  Sobrejuanite had exclusive possessory interest of the Toyota Tercel such that Harsh—

18  who did not know Sobrejuanite—knew or should have known that the vehicle was stolen.

19  *In re Winship*, 397 U.S. at 364; *Juan H.*, 408 F.3d at 1274; NRS § 205.273(1)(b). Indeed,

20  Sobrejuanite was given the vehicle months before the theft, had the vehicle's title in her

21  possession, was the exclusive driver of the vehicle, and registered the vehicle following

22  the theft. (*See* ECF No. 11-2 at 203-05.) Because the Nevada Supreme Court

23  reasonably denied this claim, Harsh is denied federal habeas relief for Ground 4.

### D.  Ground 5

25  In Ground 5, Harsh alleges that his federal constitutional rights were violated

26  because the state district court failed to give an instruction on his theory of the case.

27  (ECF No. 22 at 22.) Specifically, Harsh contends that the state district court erred by not

28  instructing the jury that he could be found guilty of the lesser offense of unlawful taking

of a vehicle. (*Id.* at 23.) In affirming Harsh's judgment of conviction, the Nevada Supreme Court held:

> Harsh contends that the district court erred by refusing to instruct the jury on the offense of unlawful taking of a vehicle. Although a defendant is entitled to a jury instruction on his theory of the case if some evidence supports it, *Harris v. State*, 106 Nev. 667, 670, 799 P.2d 1104, 1105-06 (1990), a defendant is not entitled to instructions that are "misleading, inaccurate or duplicitous," *Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005). An instruction on the offense of unlawful taking of a vehicle would be misleading and inaccurate because unlawful taking of a vehicle is not a lesser-included offense of possession of a stolen vehicle, Harsh was not charged with unlawful taking of a vehicle, and the instruction would incorrectly suggest that the jury could find Harsh guilty of unlawful taking of a vehicle. *See* NRS 205.2715(1); NRS 205.273(1); *Smith v. State*, 120 Nev. 944, 946, 102 P.3d 569, 571 (2004) (defining lesser-included offense); *Peck v. State*, 116 Nev. 840, 845, 7 P.3d 470, 473 (2000) (a defendant is not entitled to an instruction on a lesser-related offense), *overruled on other grounds by Rosas v. State*, 122 Nev. 1258, 1269, 147 P.3d 1101, 1109
>
> (2006). Accordingly, we conclude that the district court did not abuse its discretion by refusing to give this instruction.

(ECF No. 11-15 at 4-5.) The Nevada Supreme Court's rejection of Harsh's claim was neither contrary to, nor an unreasonable application of, clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). "[T]he Constitution [also] guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). The heart of Harsh's argument is that the state district court prevented him from establishing his defense theory by denying his proposed instruction. *See Mathews v. United States*, 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."); *see also Bradley v. Duncan*, 315 F.3d 1091, 1099 (9th Cir.

2002) ("[T]he state court's failure to correctly instruct the jury on the defense may deprive the defendant of his due process right to a present a defense."). "[A] claim that a court violated a petitioner's due process rights by omitting an instruction requires a showing that the error 'so infected the entire trial that the resulting conviction violate[d] due process.'" *Menendez v. Terhune*, 422 F.3d 1012, 1029 (2005) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Harsh's proposed jury instruction provided, in pertinent part, that "[t]he offense of [p]ossession of a [s]tolen [v]ehicle, with which the defendant is charged in the Information, necessarily includes the lesser offense of [u]nlawful [t]aking of [v]ehicle," and "[i]f the vehicle was taken without the intent to permanently deprive the owner of the vehicle[,] then the offense is [u]nlawful [t]aking of [v]ehicle." (ECF No. 23-1 at 4.) Harsh's trial counsel explained the basis for the instruction: "the car was taken from [Sobrejuanite's] residence and so . . . the lesser included is appropriate . . . . If he's in possession of a vehicle that he does not intend to deprive the owner of and that's what the unlawful taking of the vehicle goes to." (ECF No. 23-3 at 59.) The state district court refused to give the instruction, reasoning that the instruction has "to go with stealing the car and that isn't the charge, the charge is possession of a stolen vehicle." (*Id.*)

"[D]ue process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982) (emphasis in original). Here, the Nevada Supreme Court, the final arbiter of Nevada law, reasonably determined that unlawful taking of a vehicle is not a lesser-included offense of possession of a stolen vehicle pursuant to Nevada law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Indeed, although somewhat related, taking is a separate—not a lesser-included—offense of possession.[7] *Compare* NRS § 205.2715 *with* NRS §205.273. Accordingly, because the

___

[7]Harsh requests that this Court review this claim *de novo* because the Nevada Supreme Court unreasonably applied federal law in determining that the unlawful taking

1  Nevada Supreme Court reasonably denied this claim, Harsh is denied federal habeas

2  relief for Ground 5.

3        **E.  Ground 6**

4        In Ground 6, Harsh alleges that his federal constitutional rights were violated due

5  to numerous instances of ineffectiveness on the part of his trial counsel. (ECF No. 22 at

6  26.) In *Strickland*, the United States Supreme Court propounded a two-prong test for

7  analysis of claims of ineffective assistance of counsel requiring the petitioner to

8  demonstrate (1) that the attorney's "representation fell below an objective standard of

9  reasonableness," and (2) that the attorney's deficient performance prejudiced the

10 defendant such that "there is a reasonable probability that, but for counsel's

11 unprofessional errors, the result of the proceeding would have been different." *Strickland*

12 *v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective

13 assistance of counsel must apply a "strong presumption that counsel's conduct falls

14 within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's

15 burden is to show "that counsel made errors so serious that counsel was not functioning

16 as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

17 Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas

18 petitioner "to show that the errors had some conceivable effect on the outcome of the

19 proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the

20 defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

21

22       _____

23 of a vehicle is not a lesser-included offense of possession of a stolen vehicle. (*See* ECF
No. 66 at 41-42.) To prove his point, Harsh argues that "possession of a stolen vehicle

24 cannot be proven without also proving unlawful taking of a vehicle." (*Id.* at 41.) This Court
disagrees. The elements of the offense of unlawful taking of a vehicle are not a subset of

25 the elements of the crime of possession of a stolen vehicle. Unlawful taking requires a
taking, which is not a subset of any element of possession of a stolen vehicle. And

26 although it may be inferred that Harsh unlawfully took Sobrejuanite's vehicle, he was not
charged with this offense. *See, e.g., Schmuck v. United States*, 489 U.S. 705, 717 (1989)

27 ("It is ancient doctrine of both the common law and our Constitution that a defendant

28 cannot be held to answer a charge not contained in the indictment brought against him.").

1    Where a state district court previously adjudicated the claim of ineffective
2  assistance of counsel under *Strickland*, establishing that the decision was unreasonable
3  is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United
4  States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential,
5  and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v.*
6  *Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted)
7  ("When a federal court reviews a state court's *Strickland* determination under AEDPA,
8  both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's
9  description of the standard as doubly deferential."). The Supreme Court further clarified
10 that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were
11 reasonable. The question is whether there is any reasonable argument that counsel
12 satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### i.  Ground 6(1)

14    In Ground 6(1), Harsh alleges that his trial counsel failed to investigate
15 Sobrejuanite's bankruptcy filings and present the bankruptcy documentation as
16 evidence. (ECF No. 22 at 26.) Harsh elaborates that if his trial counsel had done minimal
17 research, she would have been able to effectively cross-examine Sobrejuanite about
18 her ownership of the vehicle. (ECF No. 66 at 45.) In affirming the state district court's
19 denial of Harsh's state habeas petition, the Nevada Court of Appeals held:

20    Harsh claims counsel was ineffective for failing to investigate and produce
21  documents regarding the victim's bankruptcy and the fact she did not list
    the vehicle as an asset during the bankruptcy proceedings. Harsh claims
22  the victim could have been impeached with this evidence and counsel could
    have argued she committed perjury by failing to list the vehicle in her
23  bankruptcy documents by testifying at trial her bankruptcy attorney told her
    not to list the vehicle as an asset.
24
    The district court found counsel was not deficient for failing to investigate
25  because the victim testified at trial she did not list the vehicle in her
    bankruptcy documents, the bankruptcy documents would not have been
26  admissible under NRS 50.085(3), and counsel thoroughly cross-examined
    the victim about her ownership of the vehicle and the fact she did not re-title
27  the vehicle until October, 10 months after receiving the vehicle from the
    previous owner. Further, the district court found Harsh failed to demonstrate
28

18

a reasonable probability of a different outcome at trial because the jury was aware of the victim's dishonesty in her bankruptcy proceeding and received extensive testimony attacking her veracity. The district court also found this claim failed on the prejudice prong because the Nevada Supreme Court already concluded Harsh failed to demonstrate a reasonable probability of a different outcome at trial had this evidence been presented at trial. The district court found the prejudice claim was barred by the doctrine of law of the case and could not be avoided by a more detailed and precisely focused argument.

We agree with Harsh that neither the doctrine of law of the case nor res judicata barred this claim. However, we conclude Harsh failed to demonstrate prejudice such that there was a reasonable probability of a different outcome at trial had counsel investigated and produced documents from the victim's bankruptcy proceedings. Therefore, while the district court erred by finding the claim was barred by the doctrine of law of the case and res judicata, we nevertheless affirm the denial of this claim. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) (holding a correct result will not be reversed simply because it is based on the wrong reason).

(ECF No. 13-8 at 3-4.) The Nevada Court of Appeals' rejection of Harsh's claim was neither contrary to, nor an unreasonable application of, clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

Harsh moved for a new trial two years after his trial based on newly discovered evidence. (*See* ECF No. 11-18 at 2.) That newly discovered evidence was a schedule of personal property that Sobrejuanite submitted in her bankruptcy proceeding "under penalty of perjury" on September 7, 2010, several months after the theft. (*Id.* at 6.) In that document, Sobrejuanite indicated that she did not own any "[a]utomobiles, trucks, trailers, [or] other vehicles and accessories." (*Id.*)

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Although Harsh's trial counsel may have been deficient for not fulfilling these investigative duties and researching Sobrejuanite's bankruptcy proceeding documents, the Nevada Court of Appeals reasonably determined that Harsh failed to demonstrate prejudice. *Id.* at 694. To be sure, questioning Sobrejuanite about her statement to the bankruptcy court that she did not own a vehicle would have impeached her testimony that

1    she owned the Toyota Tercel. However, the jury was already aware of Sobrejuanite's

2    deceit regarding her bankruptcy proceedings as it related to the Toyota Tercel. As

3    discussed in Ground 4, Sobrejuanite testified that she did not change the vehicle's

4    registration until the fall of 2010 "[b]ecause [she] ha[d] to file a bankruptcy and [her]

5    attorney said [she could] not put it in [her] name yet until the bankruptcy [was] done."

6    (ECF No. 11-2 at 205.) Therefore, because Sobrejuanite's credibility was already

7    questioned, Harsh fails to demonstrate the further impeachment would have resulted in

8    a different result at trial. *Strickland*, 466 U.S. at 694; *see also Doe v. Ayers*, 782 F.3d 425,

9    431 (9th Cir. 2015) (concluding that the defendant's trial counsel "could have done a much

10   better job of impeaching [the witness], . . . but the failures regarding impeachment of [the

11   witness] are of comparatively little consequence"); *Djerf v. Ryan*, 931 F.3d 870, 881 (9th

12   Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."). Thus, because

13   the Nevada Court of Appeal reasonably affirmed the state district court's denial of this

14   claim, Harsh is denied federal habeas relief for Ground 6(1).

15                              **ii.  Ground 6(2)**

16        In Ground 6(2), Harsh alleges that his trial counsel failed to call Sobrejuanite's

17   bankruptcy attorney, Christine Owen, to demonstrate that the State's case was founded

18   on perjured testimony. (ECF No. 22 at 28.) Harsh raised this claim in his appeal of the

19   denial of his state habeas petition. (*See* ECF No. 13-3 at 31-32.) However, the Nevada

20   Court of Appeals did not address this claim in its order denying Harsh relief. (*See* ECF

21   No. 13-8.) As such, this Court "'look[s] through' the unexplained decision to the last

22   related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*,

23   138 S.Ct. 1188, 1192 (2018). This Court "then presume[s] that the unexplained decision

24   adopted the same reasoning." *Id.* Here, the state district court held:

25        Harsh again complains that counsel was ineffective for failing to investigate
26        Sobrejuanite's bankruptcy proceedings. In support of his claim, Harsh
          provides an affidavit from Sobrejuanite's bankruptcy attorney, Christine
27        Owen, in which she indicates that she would have never advised
          Sobrejuanite to omit any assets from her bankruptcy petition. However,
28        again this Court finds Harsh cannot establish prejudice. Additional

                                      20

1

2

3

> impeachment by way of Sobrejuanite's bankruptcy attorney would not have changed the outcome, because, as discussed above, Sobrejuanite's veracity was extensively attacked by counsel during trial. Further, Owen's testimony would have been inadmissible under the attorney-client privilege. *See* NRS 49.055. As such, Harsh's claim is denied.

4   (ECF No. 34-7 at 13.) The state district court's rejection of Harsh's claim was neither

5   contrary to, nor an unreasonable application of, clearly established law as determined

6   by the United States Supreme Court and was not based on an unreasonable

7   determination of the facts.

8        During Harsh's state habeas proceedings, Harsh submitted an affidavit of

9   Christine Owen, the attorney who "assisted Marissa Sobrejuanite in filing her bankruptcy

10  petition." (ECF No. 13-1 at 29.) Owen declared that, "pursuant to [her] oath as an officer

11  of the court, . . . [she] would never advise Marissa Sobrejuanite, or any other client, to

12  omit any assets from their bankruptcy petition." (*Id.*) Owen also declared that, "pursuant

13  to [her] oath as an officer of the court, . . . [she] would never advise Marissa Sobrejuanite,

14  or any other client, not to register their vehicle with the Department of Motor Vehicles in

15  an effort to omit the vehicle from a bankruptcy proceeding." (*Id.*)

16       The state district court reasonably determined that Harsh fails to demonstrate

17  prejudice. *See Strickland*, 466 U.S. at 694. Similar to Ground 6(1), establishing that

18  Sobrejuanite misrepresented—or alternatively, merely misinterpreted—her bankruptcy

19  attorney's advice during her testimony at Harsh's trial may have cast doubt on her

20  credibility. However, again, the jury was already aware of Sobrejuanite's dishonesty

21  regarding her bankruptcy proceedings. As such, the state district court reasonably

22  determined that additional impeachment evidence would not have changed the result of

23  Harsh's trial. *See Strickland*, 466 U.S. at 694. Because the state district court reasonably

24  denied Harsh's claim, he is denied federal habeas relief for Ground 6(2).[8]

25  ///

26  ///

27  _____

28       [8]Ground 6(3) will be discussed with Grounds 6(8) through 6(13), the other procedurally defaulted Grounds.

### iii.  Grounds 6(4) and 6(5)

In Ground 6(4), Harsh alleges that his trial counsel failed to argue that Sobrejuanite's noncompliance with Nevada's vehicle registration requirements further demonstrated that she was not the owner of the vehicle. (ECF No. 22 at 30.) And in Ground 6(5), Harsh alleges that his trial counsel failed to call the Department of Motor Vehicle's custodian of records in order to introduce records showing that Co—not Sobrejuanite—was the registered owner of the Toyota Tercel on the date of the theft. (*Id.* at 32.) In affirming the state district court's denial of Harsh's state habeas petition, the Nevada Court of Appeals addressed these two claims together:

> Harsh claims counsel was ineffective for failing to argue the victim failed to retitle the vehicle within 10 days of the title being signed over to her and for failing to subpoena the custodian of records from the DMV in order to admit documents demonstrating someone other than the victim was the legal owner of the vehicle. The district court found counsel was not deficient and there was no resulting prejudice because the fact the vehicle was titled in
>
> someone else's name at the time the vehicle was stolen was not disputed at trial. Substantial evidence supports the decision of the district court and we conclude the district court did not err by denying this claim.

(ECF No. 13-8 at 4.) The Nevada Court of Appeals' rejection of Harsh's claims was neither contrary to, nor an unreasonable application of, clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

Following the conclusion of the presentation of evidence, Harsh's trial counsel attempted to admit an exhibit, which was "in response to a subpoena of the custodian of records" from the Department of Motor Vehicles. (ECF No. 23-3 at 63-64.) Harsh's trial counsel requested that she be allowed to publish the exhibit without a witness present to authenticate it because it amounted to a business record, explaining that "the State did notice the custody [sic] of records for the Department of Motor Vehicles and chose not to call them." (*Id.* at 64.) The state district court disallowed the request, ///

reasoning that "you have to have someone come in and say this is what it is, you can't just admit a document like that." (*Id.*)

While it may have been prudent to have subpoenaed the Department of Motor Vehicle's custodian of records in order to admit the Toyota Tercel's registration documentation into evidence, instead of relying on the State's representation that it would be calling the custodian as its witness, the Nevada Court of Appeals reasonably determined that Harsh failed to demonstrate prejudice. *See Strickland*, 466 U.S. at 688. Indeed, as the Nevada Court of Appeals noted, there was no dispute that Sobrejuanite's name was not on the Toyota Tercel's title at the time of the theft. Sobrejuanite testified that Co gave her the Toyota Tercel around December 2009 or January 2010. (ECF No. 11-2 at 203, 216.) And although Co gave Sobrejuanite the Toyota Tercel's title, Sobrejuanite did not change the vehicle's registration until the fall of 2010. (*Id.* at 204-05.) As such, the registration document would have been superfluous.

Turning to the lack of argument by his trial counsel on this point, it is true that NRS § 482.426(1)(a) provides that "[w]hen a used . . . vehicle is sold . . . by a person who is not a dealer . . . , the seller or buyer . . . shall, within 10 days after the sale . . . [s]ubmit . . . the certificate properly endorsed." However, Sobrejuanite's failure to follow this 10-day registration requirement was unnoteworthy. Nevada law does not define the owner of a motor vehicle based on the vehicle's registration. Rather, NRS § 205.271 provides that the owner of a vehicle is "a person having the lawful use or control or the right to the use and control of a vehicle under a lease or otherwise for a period of 10 or more successive days." Accordingly, because it was undisputed that Sobrejuanite failed to change the Toyota Tercel's registration at the time of the theft, as the Nevada Court of Appeals aptly noted, and because that failure did not affect her ownership status, that court reasonably determined that Harsh's trial counsel was not deficient for not making the dispensable argument about the 10-day registration requirement. *See Strickland*, 466 U.S. at 694. Because the Nevada Court of Appeals reasonably denied Harsh relief on these two claims, Harsh is denied federal habeas relief for Grounds 6(4) and 6(5).

#### iv.  Ground 6(6)

In Ground 6(6), Harsh alleges that his trial counsel failed to adequately investigate the existence of Sobrejuanite's registered certificate of title and provide this information to him for the purposes of his plea negotiations. (ECF No. 22 at 32.) Harsh claims that if he had known of the existence of the title, he would have accepted the State's plea offer. (*Id.* at 33.) In affirming the state district court's denial of Harsh's state habeas petition, the Nevada Court of Appeals held:

> Harsh claims counsel was ineffective for failing to obtain the title that was presented at trial and had counsel obtained this title, he would have accepted negotiations, and not gone to trial. The district court found counsel did subpoena the DMV records, and therefore, counsel was not deficient. The district court also found Harsh's claim he would have accepted the plea negotiations was a bare and naked claim and Harsh failed to explain how having the title in the victim's name would have changed his decision with respect to the negotiations where the victim always had a possessory interest in the vehicle. Substantial evidence supports the decision of the district court, and we conclude the district court did not err by denying this claim.

(ECF No. 13-8 at 5.) The Nevada Court of Appeals' rejection of Harsh's claim was neither contrary to, nor an unreasonable application of, clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

At Harsh's preliminary hearing, the State introduced "a copy of the title that Mr. Co gave [Sobrejuanite] when he gave [her] the vehicle." (ECF No. 11-1 at 4-5.) That title listed Pedro Co as the owner of the vehicle and listed Sobrejuanite as the transferee. (*See* ECF No. 13-1 at 34.) Following the preliminary hearing, Harsh's trial counsel subpoenaed the following from the Department of Motor Vehicles: "[a]ny and all records pertaining to a 1994 White 4-door Toyota Tercel, . . . [r]egistered in the State of Nevada in the name of Pedro Co." (ECF No. 13-1 at 37.) Several months later, at the trial, the State sought to introduce the Toyota Tercel's new title showing Sobrejuanite as the owner of the vehicle. (*See* ECF No. 11-2 at 199, 206-07; *see also* ECF No. 13-1 at 32.) The State received this new title the morning of the first day of trial from Sobrejuanite.

24

1  (ECF No. 11-2 at 199.) Harsh's trial counsel objected because she had not been given

2  this new title during discovery and had not personally obtained it from the Department

3  of Motor Vehicles. (*Id.*) The state district court admitted the title. (*Id.*)

4          Although Harsh's trial counsel may have been deficient in failing to make an

5  accurate subpoena request—requesting records regarding Sobrejuanite's registration

6  of the vehicle and not just Pedro Co's registration—the Nevada Court of Appeals

7  reasonably concluded that Harsh failed to demonstrate prejudice. *See Strickland*, 466

8  U.S. at 694. When an ineffective-assistance-of-counsel claim is based "[i]n the context

9  of pleas[,] a defendant must show the outcome of the plea process would have been

10  different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). As the

11  Nevada Court of Appeals reasonably concluded, Harsh's claim that he would have

12  accepted the plea negotiations if he had seen the new title prior to trial lacks supports.

13  Before calling in the prospective jurors, the state district court asked Harsh if he wanted

14  to discuss a negotiation with his trial counsel. (ECF No. 11-2 at 17.) Harsh responded,

15  "[n]o, they're just giving m[e] . . . [s]ix to fifteen, I might as well just give you my life"

16  because "I've got two little . . . baby boys at home. I can't be doing no 6 to 15 years."

17  (*Id.* at 17-18.) A little while later, the State indicated that it dropped the lower end of its

18  plea offer to five years, and Harsh told the state district court that he could not "make a

19  decision on my own on anything" because he had "a wife and two kids [he would have]

20  to talk to." (*Id.* at 21-22.) Because this record demonstrates that Harsh was not

21  amenable to any negotiation and because Harsh relies entirely on his self-serving

22  statement that he would have taken a plea deal, Harsh fails to demonstrate that the

23  outcome of the plea-bargaining process would have been different had his trial counsel

24  obtained the Toyota Tercel's new title prior to trial. *See Lafler*, 566 U.S. at 163.

25  Accordingly, because the Nevada Court of Appeals reasonably denied Harsh's claim,

26  Harsh is denied federal habeas relief for Ground 6(6).

27  ///

28  ///

1

2
3
4
5

**v.  Ground 6(7)**

In Ground 6(7), Harsh alleges that his trial counsel failed to object to Officer
Ditmar's testimony regarding shaved keys because the State did not qualify him as an
expert witness. (ECF No. 22 at 33.) In affirming the state district court's denial of Harsh's
state habeas petition, the Nevada Court of Appeals held:

6
7
8
9
10
11
12
13
14
15
16

> Harsh claims counsel was ineffective for failing to object to the use of expert
> testimony by a witness who was not noticed as an expert. Specifically,
> Harsh claims counsel should have objected to the testimony by a police
> officer regarding shaved keys. Harsh failed to demonstrate he was
> prejudiced because Harsh failed to demonstrate the State would not have
> been permitted to present the officer's testimony. *See Sampson v. State*,
> 121 Nev. 820, 827, 122 P.3d 1255, 1259-60 (2005) (discussing the range
> of possible remedies for failure to make appropriate expert witness
> disclosure). Further, the district court found Harsh could not demonstrate a
> reasonable probability of a different outcome at trial had the officer not
> testified about the shaved keys. The victim testified the vehicle was hers
> and it was stolen. Harsh was found in the vehicle, a Toyota, and the key
> being used for the vehicle was a Hyundai key. Further, Harsh told the
> officers the vehicle was not his and he "borrowed it from a guy" but he was
> unable to provide the person's name or contact information. Substantial
> evidence supports the decision of the district court, *see* NRS 205.273(1)(b),
> and we conclude the district court did not err by deny [sic] this claim.

17
18
19
20

(ECF No. 13-8 at 5-6.) The Nevada Court of Appeals' rejection of Harsh's claim was
neither contrary to, nor an unreasonable application of, clearly established law as
determined by the United States Supreme Court and was not based on an unreasonable
determination of the facts.

21
22
23
24
25
26
27
28

As was explained more fully in Ground 4, Officer Ditmar testified that he pulled
over the Toyota Tercel on July 28, 2010, and arrested the driver, Harsh, because the
vehicle had been reported as being stolen. (ECF No. 23-3 at 6-7, 10-12.) During his
inventory search, Ditmar recovered a shaved "Hyundai key in the ignition." (ECF No. 23-
3 at 13.) Ditmar then explained that "people [who] steal cars will often take the
screwdriver and they'll jam it into the ignition and force start it. . . . At that point, . . . they'll
use a key that's shaved to go ahead and stick in there and turn the car on and off." (*Id.*
at 14.) A shaved key is one in which a person has "shave[d] off a lot of the fine points

1   and tips." (*Id.*) During cross-examination, Harsh's trial counsel questioned Ditmar about

2   shaved keys, asking whether he was an expert on shaved keys, what training he had

3   received on identifying shaved keys, the difference between a worn-down key and a

4   shaved key, whether he followed "specific standard[s] or guideline[s]" to determine the

5   key's shaved status, and whether he sought a second opinion from anyone about the

6   shaved key. (ECF No. 23-3 at 32-33.)

7          It is true that the State did not attempt to qualify Officer Ditmar as an expert on

8   shaved keys, but it is not clear that an expert is needed to identify a shaved key. NRS §

9   50.275 provides that, "[i]f scientific, technical or other specialized knowledge will assist

10  the trier of fact to understand the evidence or to determine a fact in issue, a witness

11  qualified as an expert by special knowledge, skill, experience, training or education may

12  testify to matters within the scope of such knowledge." Here, Ditmar's identification of

13  the shaved key was simply based on his "training and experience," rather than any

14  formal specialized knowledge. (*See* ECF No. 23-3 at 32-33.) Moreover, Harsh's trial

15  counsel attempted to highlight any deficiencies in Ditmar's testimony regarding the

16  shaved key during her cross-examination. (*See id.*)

17         However, even if Harsh's trial counsel was deficient, the Nevada Court of Appeals

18  reasonably determined that Harsh failed to demonstrate prejudice. *See Strickland*, 466

19  U.S. at 694. As that court reasonably noted, Harsh fails to demonstrate that Officer

20  Ditmar's testimony on shaved keys would have been excluded has his trial counsel

21  objected. The Nevada Supreme Court has held that "if a witness fails to qualify as an

22  expert, the court should not permit the witness to testify unless the witness may

23  otherwise be considered a lay witness." *Mulder v. State*, 116 Nev. 1, 14, 992 P.2d 845,

24  853 (2000). As Ditmar was one of the officers who pulled Harsh over and inventoried

25  the Toyota Tercel, he would not have been excluded as a witness. And because Ditmar's

26  conclusion that the key was shaved was based on his experience as a law enforcement

27  officer—indeed, Ditmar testified that he did not consider himself an expert on shaved

28  keys (*see* ECF No. 23-3 at 32-33)—there would not have been a basis to limit his lay-

witness testimony on shaved keys. Rather, it was the merely "function of the jury . . . to determine the weight and credibility to give [his] testimony" on shaved keys given his lack of formal expertise on the matter. *Mulder*, 116 Nev. at 13, 992 P.2d at 852. Because the Nevada Court of Appeals reasonably denied his claim, Harsh is denied federal habeas relief for Ground 6(7).

#### vi.  Grounds 6(3) and 6(8) through 6(12)

This Court previously determined that Grounds 6(3) and 6(8) through 6(12) were technically exhausted but procedurally defaulted. (ECF No. 44 at 10.) Harsh previously argued that he could demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to excuse the default because his post-conviction counsel was ineffective. (*See* ECF No. 36.) This Court deferred consideration of Harsh's cause and prejudice argument under *Martinez* until the time of merits consideration. (ECF No. 44 at 10.)

In *Martinez*, the United States Supreme Court ruled that "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim" if "the state courts did not appoint counsel in the initial-review collateral proceeding" or "where appointed counsel in the initial-review collateral proceeding . . . was ineffective." 566 U.S. at 14. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* This Court will now determine whether Harsh's underlying ineffective-assistance-of-trial-counsel claims are substantial.

#### 1.  Ground 6(3)

In Ground 6(3), Harsh alleges that his trial counsel failed to call Christine Owen to establish the perjury of Sobrejuanite, which would have established a basis for a mistrial pursuant to *Napue v. Illinois*. (ECF No. 22 at 29-30.) "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see*

*also Maxwell v. Roe*, 628 F.3d 486, 507 (9th Cir. 2010) (explaining that "to permit the petitioner's conviction to stand on the basis of . . . false material evidence violated his constitutional rights").

This claim is based on a single response made by Sobrejuanite: she did not change the vehicle's registration until the fall of 2010 "[b]ecause [she] ha[d] to file a bankruptcy and [her] attorney said [she could] not put it in [her] name yet until the bankruptcy [was] done." (ECF No. 11-2 at 204-05.) Although Christine Owen declared that she did not advise Sobrejuanite to wait to transfer the title, it is not clear that Sobrejuanite's foregoing testimony was actually false in violation of *Napue*. Rather, Sobrejuanite may have simply misunderstood her bankruptcy attorney's advice. Moreover, Harsh fails to demonstrate that this single testimonial statement was material. *See Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (explaining that a *Napue* violation claim will succeed when "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material" (internal quotation marks and alternation omitted).). Sobrejuanite testified consistently that she owned the Toyota Tercel, and the basis of her postponement in changing the vehicle's registration did not alter that ownership status at the time of the theft. Ground 6(3) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

### 2.  Ground 6(8)

In Ground 6(8), Harsh alleges that his trial counsel failed to move for a new trial or resentencing based on judicial bias. (ECF No. 22 at 37.) Harsh elaborates that the state district court judge improperly intervened in the plea-bargaining process, attempted to coerce Harsh into pleading guilty, threatened a life sentence, punished him for going to trial, and failed to consider mitigating factors at sentencing. (ECF No. 66 at 70.) Harsh explains that the judge had a reputation at the time of Harsh's trial for improperly participating in plea negotiations, which should have alerted Harsh's trial counsel of the judge's improper actions. (*Id.* at 70-71 (citing *Burton v. State*, 56639, 2012

1    WL 988053 (Nev. 2012); *Perez v. State*, Case No. 60743, 2013 WL 597790 (Nev. 2013);

2    *Black v. State*, Case No. 63880, 2014 WL 1424587 (Nev. 2014).)

3            Before the prospective jury panel was brought into the courtroom on the first

4    morning of trial, Harsh's trial counsel informed the state district court that Harsh had

5    rejected the State's plea offer. (ECF No. 11-2 at 5.) The state district court judge

6    responded, in part, that "[h]e told him how tough of a sentencer I was." (*Id.*) Later, the

7    judge asked Harsh if he wanted to speak with his trial counsel again about any plea

8    negotiation, informing Harsh that he was "looking at life" and that he "should listen to

9    [his] attorney. [His] attorney practices in this department a lot. She's a good lawyer and

10   [he] probably should listen to her. She knows that [the judge is] a hard sentencer." (*Id.*

11   at 17-18.) Following a pause in the proceedings, the judge then informed Harsh of the

12   following: "[your trial counsel] will probably tell you that I will follow the recommendation

13   that she and the DA work out. But she'll probably also tell you that there's a substantial

14   likelihood if you're convicted that you're going to go to prison for life." (*Id.* at 19.)

15   Following another pause in the proceedings, the judge stated that if Harsh took a "five-

16   year [plea deal], [he would] probably do three, four [years]," but if he did not take the

17   plea deal, he was "going probably [to] do life without." (*Id.* at 22.) When Harsh failed to

18   respond, the judge brought the jury in to start the trial. (*Id.*) At Harsh's sentencing

19   hearing, the State requested that the state district court "sentence [Harsh] under the

20   maximum amount under th[e small habitual] statute." (ECF No. 11-6 at 6.) The court

21   sentenced Harsh "to 120 months to life on a large habitual criminal." (*Id.* at 13.)

22           The Nevada Supreme Court has adopted "a bright-line rule prohibiting any

23   judicial participation in the plea negotiation process with one exception: the judge may

24   indicate whether he or she is inclined to accept a sentencing recommendation of the

25   parties." *Cripps v. State*, 122 Nev. 764, 772-73, 137 P.3d 1187, 1192-93 (2006). The

26   state district court's comments prior to the commencement of Harsh's trial treaded on

27   the line of crossing into improper territory based on *Cripps*. However, it appears that the

28   court was merely warning Harsh of its sentencing practices and of the reality Harsh

1    faced: a possible life sentence if he was convicted. Moreover, there was no indication

2    at Harsh's sentencing hearing that the court sentenced Harsh to life in prison based on

3    his refusal to plead guilty. Contrarily, the court implied that the basis of its sentence was

4    that Harsh "planned [his crime] out very much, this wasn't a crime of convenience." (ECF

5    No. 11-6 at 13 (explaining it "was waiting for an explanation about the . . . credit card

6    scanner that was found in his car when he was pulled over in a stolen vehicle").)

7    Accordingly, Harsh fails to demonstrate that his trial counsel was deficient for not moving

8    for a new trial or new sentencing judge due to judicial bias. *See Strickland*, 466 U.S. at

9    688. Ground 6(8) is not substantial and is denied as being procedurally defaulted. *See*

10   *Martinez*, 566 U.S. at 14.

11   ### 3.  Ground 6(9)

12       In Ground 6(9), Harsh alleges that his trial counsel failed to object to Jury

13   Instruction No. 7 because it improperly relieved the State of its burden to prove that

14   Harsh knew or had reason to know the stolen nature of the car. (ECF No. 22 at 39.) Jury

15   Instruction No. 7 provided, "[a] person may be found guilty of [p]ossession of [s]tolen

16   [v]ehicle where the circumstances are such as to put a reasonable person on notice as

17   to the stolen nature of the vehicle he possessed." (ECF No. 11-3 at 8.)

18       While Jury Instruction No. 7's language does not match the language from the

19   possession of a stolen vehicle statute, *see* NRS § 205.273(1)(b) ("A person commits an

20   offense involving a stolen vehicle if the person . . . [h]as in his or her possession a motor

21   vehicle which the person knows or has reason to believe has been stolen."), the

22   language in Jury Instruction No. 7 appears to have come from Nevada's caselaw on

23   possession of stolen property generally. *See Gray v. State*, 100 Nev. 556, 558, 688 P.2d

24   313, 314 (1984) (holding "that a person may be found guilty of possession of stolen

25   property in Nevada where the circumstances are such as to put a reasonable person on

26   notice as to the stolen nature of the goods he possessed"). Moreover, Jury Instruction

27   No. 5 mirrors the statutory language of NRS § 205.273(1)(b). (*See* ECF No. 11-3 at 6

28   (providing that "[a]ny person who has in his possession any motor vehicle which he

knows or has reason to believe has been stolen is guilty of [p]ossession of [s]tolen [v]ehicle").) For these reasons, Harsh fails to demonstrate that his trial counsel was deficient for not objecting to Jury Instruction No. 7 or that the state district court would have granted a request to remove it. *See Strickland*, 466 U.S. at 688, 694. Ground 6(9) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

### 4.  Ground 6(10)

In Ground 6(10), Harsh alleges that his trial counsel failed to move to strike seven jurors—namely, Paul Robinson, Sandra Pizano, Rachel Hoer, Michael Hale, Amy Spero, Diane Estrada, and Chrystal Harry—and failed to move for a new trial due to the lack of an impartial jury. (ECF No. 22 at 41.) This Court will address each of these jurors and their voir dire comments in turn.

First, Paul Robinson stated that he was both a victim of, and accused of a crime, explaining that he was "[s]tuck up at gunpoint back East about seven years ago" and had "a DUI charge that's pending." (ECF No. 11-2 at 44.) Robinson stated that those experiences "[s]omewhat" prejudiced him because, "in [his] opinion, most people that are accused of a crime are usually guilty." (*Id.* at 45.) When the state district court asked, "if the State doesn't prove the elements of the crime, you would find him not guilty," Robinson responded, "[y]eah, that's correct." (*Id.*) Robinson also stated that he would be fair to both sides. (*Id.*) When questioned by the State, Robinson stated that he believed law enforcement officers "could be very belligerent, they could be very disrespectful, not answer your questions, not want to know, not want to give you the time of day." (*Id.* at 47.) However, "despite . . . some of [his] feelings towards the officers," Robinson stated that he "could look at all the evidence in this case and be fair to both the Defendant and the State." (*Id.* at 48.)

Second, Sandra Pizano stated that her husband, with whom she had separated, "[b]roke in [her] house, [and] stole [her] car." (ECF No. 11-2 at 57, 60.) Pizano understood that "the State would have to present evidence beyond a reasonable doubt

to find [Harsh] guilty" and stated that she would not have "any problems returning a not guilty verdict" if "the State fail[ed] to present enough evidence to find him guilty." (*Id.* at 66.) Similarly, Amy Spero and Diane Estrada also both reported that they had a vehicle stolen from them. (*Id.* at 74-75, 102-03.) Spero stated that there was nothing about that experience that she would hold against either party and reported that she could be a fair and impartial juror. (*Id.* at 75, 78.) And Estrada maintained that she would not hold her experience against Harsh and would be fair and impartial. (*Id.* at 102-03.)

Next, Rachel Hoer explained that her house had "been robbed three times" and her car had "been broken into." (ECF No. 11-2 at 187-88.) Hoer stated that there was no reason she would not be unfair and impartial to both parties. (*Id.* at 188.) When Harsh's trial counsel asked Hoer if she would "give more weight to the testimony of a police officer than a lay witness," she said, "I don't think I'd give more weight, but I would - - like I'd respect their - - what they'd have to say." (*Id.* at 189.) Harsh's trial counsel questioned Hoer further, asking if she believed a police officer's testimony was "more credible than another person's testimony." (*Id.*) Hoer responded in the negative. (*Id.*) Likewise, Chrystal Harry also had her vehicle broken into and reported that she could be fair and impartial to both parties. (*Id.* at 147-48.)

Finally, Michael Hale stated that he "had several cars broken into and [his] wife's had [*sic*] a car broken into and stolen." (ECF No. 11-2 at 190-91.) Hale thought he "would be fair and impartial," but he acknowledged that Harsh's case "hit [him] close . . . because it was something that happened in [his] life." (*Id.* at 191.) When he was questioned further by Harsh's trial counsel, Hale explained that he was upset at how the police responded to the theft of his wife's car, not that the car was stolen. (*Id.* at 194.)

Harsh fails to demonstrate that his trial counsel acted deficiently in not moving to strike these jurors and not moving for a new trial based on the alleged impartial jury. *See Strickland*, 466 U.S. at 688. Although these jurors were the victims of crimes—and in fact, most of them were victims of crimes regarding their vehicles—all the jurors reported that they would be fair and impartial. As such, Harsh fails to demonstrate that

his trial counsel had a reasonable basis to challenge them for cause. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."); *Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it."). Moreover, two of the jurors—Robinson and Hale— acknowledged negative feelings towards law enforcement. These feelings may have been beneficial to Harsh such that attempting to challenge them for cause may have been detrimental to Harsh. Accordingly, Ground 6(10) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

### 5.  Grounds 6(11) and 6(12)

In Ground 6(11), Harsh alleges that his trial counsel failed to challenge the possession of Nevada's burglary tools statute as unconstitutionally vague where, as in his case, a person can be convicted for possessing common work tools. (ECF No. 22 at 44-46.) And in Ground 6(12), Harsh alleges that his trial counsel failed to object to the State's closing argument regarding the elements of the crime of possession of burglary tools. (*Id.* at 46.) Respondents argue that this Court lacks jurisdiction to consider these two grounds because Harsh completed his sentence for his possession of burglary tools conviction before filing his instant federal petition. (ECF No. 62 at 30-31.) The Court agrees.

The federal habeas statute gives this Court jurisdiction to entertain petitions for habeas relief only from persons who are "in custody pursuant to the judgment of a State court only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The United States Supreme Court has "interpreted th[is] statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). And, the Supreme Court has "never held . . . that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." *Id.*

1  at 491 (emphasis in original) (explaining that "[w]hile [it has] very liberally construed the

2  'in custody' requirement for purposes of federal habeas, [it has] never extended it to the

3  situation where a habeas petitioner suffers no present restraint from a conviction").

4      On September 27, 2011, Harsh was sentenced to 12 months in the Clark County

5  Detention Center for his possession of burglary tools conviction, a gross misdemeanor.

6  (ECF No. 11-7 at 3.) This sentence was ordered to run concurrently with his felony

7  conviction for possession of a stolen vehicle, which was adjudged under Nevada's large

8  habitual criminal statute. (*Id.*) Harsh's federal habeas corpus petition was not filed until

9  nearly six years later in 2017 (*see* ECF No. 6), after his 12-month sentence for his

10 possession of burglary tools had fully expired. Thus, the Court dismisses Grounds 6(11)

11 and 6(12) based on a lack of jurisdiction. *See Maleng*, 490 U.S. 488, 490-91.[9]

12 ///

13

14      [9]Even if this Court had jurisdiction, Harsh fails to demonstrate that Nevada's statute

15 on possession of burglary tools was unconstitutionally vague or that the State's closing
   argument regarding the elements of the crime of possession of burglary tools was

16 improper. Therefore, Grounds 6(11) and 6(12) are not substantial and are alternatively
   denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

17      First, NRS § 205.080 provides that "[e]very person who . . . has in his or her

18 possession . . . any . . . tool, . . . designed or commonly used for the commission of
   burglary, . . . shall be guilty of a gross misdemeanor." Harsh fails to demonstrate that this

19 statute failed to give "fair notice of the conduct it punishes" or invited "arbitrary
   enforcement." *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015); *see also Giaccio*

20 *v. Pennsylvania*, 382 U.S. 399, 402-03 (1966) ("It is established that a law fails to meet
   the requirements of the Due Process Clause if it is so vague and standardless that it

21 leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free
   to decide, without any legal fixed standards, what is prohibited and what is not in each

22 particular case."). As such, Harsh fails to demonstrate that his trial counsel was deficient

23 for not challenging the statute. *See Strickland*, 466 U.S. at 688.

24      Second, Harsh takes issue with the State's closing argument that "[i]n terms of the
   burglary tools," the jury did not need to agree that Harsh "used [the tools] in a criminal

25 nature," but, instead, just needed to agree "whether or not based upon the circumstances
   and the testimony in evidence that these items are commonly used in commission of a

26 crime." (ECF No. 23-3 at 83.) Even if Harsh's trial counsel was deficient for not objecting
   to this comment, which is far from clear, Harsh fails to demonstrate prejudice, *see*

27 *Strickland*, 466 U.S. at 694, because the jury was accurately instructed regarding NRS §

28 205.080. (*See* ECF No. 11-3 at 10.)

### 6.  Ground 6(13)

In Ground 6(13), Harsh alleges that his trial counsel failed to move for a judgment of acquittal on both counts—possession of a stolen vehicle and possession of burglary tools—pursuant to NRS § 175.381. (ECF No. 22 at 47.) NRS § 175.381(2) provides that "[t]he court may, on a motion of a defendant[,] . . . set aside the verdict and enter a judgment of acquittal if the evidence is insufficient to sustain a conviction." Because a motion filed under NRS § 175.381(2) would have been unfruitful, Harsh fails to demonstrate deficiency or prejudice. *See Strickland*, 466 U.S. at 688, 694. Indeed, as was discussed in Ground 4, the State presented sufficient evidence to support Harsh's conviction for possession of a stolen vehicle. And, regarding the possession of burglary tools conviction, Officer Ditmar testified that he found the following items in the Toyota Tercel after Harsh exited the vehicle: a shaved "Hyundai key in the ignition," numerous keys on the passenger front seat, a flathead screwdriver, and a Leatherman multi-tool, which, according to Ditmar, is "another tool that's often used by car thieves."  (ECF No. 23-3 at 13, 19.) This evidence was sufficient to support Harsh's possession of burglary tools conviction. *See* NRS § 205.080. Ground 6(13) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.[10]

### V.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner Thomas Harsh. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a

---

[10]Harsh requests that this Court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in [his] amended petition and any defenses that may be raised by respondents." (ECF No. 22 at 51.) Harsh fails to explain what evidence would be presented at an evidentiary hearing. Moreover, this Court has already determined that Harsh is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this Court's reasons for denying relief. As such, Harsh's request for an evidentiary hearing is denied.

COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.* Applying these standards, the Court finds that a certificate of appealability is unwarranted.

## VI.    CONCLUSION

It is therefore ordered that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 22) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment according to this amended order.

DATED THIS 23rd Day of September 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE